UNITED STATES DISTRICT COURT
FOR THE
SOUTHERN DISTRICT OF FLORIDA

FILED BY _____ JE _____ D.C.

98 DEC 11 AM 11:52

CARLOS JENKE
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 98-639-Cr-Leonard |
| ) | |
| 727870 Ontario, Inc. ) | |
| _____ ) | |

## DEFENDANT'S SENTENCING SUBMISSION

**COMES NOW,** the Defendant corporation, 727870 Ontario, Inc., and provides the following Sentencing Submission:

Defendant corporation has plead guilty to the one count Information charging the making of false statements on a loan application. The corporation admits that the false statements set forth in the count of conviction were false.

While it is perhaps not relevant to the Court's ultimate decision regarding the amount of the fine to be imposed in this case, the Defendant respectfully takes exception to two (2) of the assertions made by the Government is its "Prosecution Version" of the Presentence Investigaiton Report. However, because this is a pre-guidelines case, the Defendant does not believe that it is necessary for the Court to make any findings of fact with respect to these matters. Rather, we merely wish to provide the Court with the Defendant's position with respect thereto.

Specifically, the Defendant corporation disagrees with the Government's assertion, in paragraph 10, that it did not record the second mortgages in an effort to prevent the banks from discovering the existence of secondary financing. In addition, the Defendant

disagrees with the Government's assertion in paragraph 11 that many of the Florida banks would never have agreed to finance the offering had they known of the secondary financing.

The Defendant corporation concedes that the secondary financing (second mortgages) were not recorded. We also understand that the Government's view is one reasonable inference that can be drawn from these circumstances. However the Defendant submits that the non-recordation of the second mortgages was not done to prevent the banks from discovering the existence of said mortgages. Rather, the Defendant corporation did not record the second mortgages because it was always its intent that the loans provided by the banks would be given first priority and those loans would be satisfied first in the event that any foreclosures or defaults would take place.

The Defendant corporation submits that it was its belief that it was not improper to have the investors execute second mortgages as long as those mortgages were not recorded. This belief was reasonable based upon the corporation's prior experiences with similar Canadian investment programs and was reinforced by the fact that the Grand program was thoroughly reviewed and approved by a well respected Canadian law firm and an internationally known accounting firm.

At the outset of the subscription process the investors provided Venetia Kenpier with personal financial information which was then used by Defendant corporation to obtain a line of credit in Canada. This personal financial information was also provided to South Florida banks to commence the loan process. The investor signed the financial statement, after reviewing the information and determining its accuracy. Investors, for the most part were individuals who had undertaken similar tax-shelter investments with

Venetia Kenpier in the past. These previous Canadian tax-shelter programs, included the financing of large portions of the down-payment. The financing of the down-payment is a common feature of such Canadian tax shelter programs and complies with Canadian law and Canadian banking practices. Furthermore, the banks in Canada that participated in the financing of these prior tax-shelter programs permitted secondary financing on behalf of borrowers. Moreover, the investors in the Grand tax-shelter were not urged to borrow the down payment; rather, they knew from past experience with similar programs that since the interest on the secondary financing was deductible under Revenue Canada regulations that it was economically wise to avail themselves of such secondary financing.

In addition, the existence of the secondary financing was made known to the banks and they were anxious to have the loan business generated by the Grand project nevertheless. Venetia Kenpier sent representatives to contact the various South Florida banks, introduce them to investment program at The Grand and solicit their involvement in the project. Venetia Kenpier's representatives fully disclosed all details of the investment program to the banks, including the existence of secondary financing.

Furthermore, the second mortgages were prepared by lawyers in South Florida and title insurance companies representing the banks and therefore the corporation's belief concerning the recordation of the second mortgages was reasonable. Several licensed real estate attorneys in South Florida served in the capacity of closing agents for the various banks. As closing agents the attorneys after reviewing the bank file prepared all closing documents including the deeds, mortgages and closing statements.

For each applicant, the bank was provided with the respective applicant's address, telephone number, social security number and other identifying information. No investor

was told by any representative of Venetia Kenpier to refuse to provide information to the bank or to misrepresent anything if a bank should make any inquiry concerning their loan application.

When the FBI first approached Defendant corporation concerning this investigation company representatives provided documents such as promotional brochures and offering memoranda which fully described the tax shelter investment program including the financing aspects thereof. Such a disclosure belies the notion that Defendant corporation falsified the loan applications so has to hide the true nature of the investment program.

As noted in the Presentence Investigation Report, the principals of the Defendant corporation took a bankrupt project in an economically depressed area of Miami and have turned it into a vibrant residential and commercial development. The Grand comprises the Double Tree Hotel consisting of 152 suites, 50 fully occupied retail/commercial entities including restaurants and shops, 810 residential condominiums and a marina, gym and pool. The Grand employees hundreds of South Florida residents and is regarded as an important part of the greater Miami economic community.

The Defendant corporation respectfully requests that the Court consider the above in determining the appropriate fine to be imposed in this case.

Respectfully submitted,

_____
Defendant, 727870 Ontario, Inc.
by: Stephen J. Bronis, Esq., counsel
for the Defendant
Fla. Bar No. 145970

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that a true and correct copy of the foregoing was mailed this 11th day of December, 1998, to: Andrew Laurie, AUSA, 99 N.E. 4th Street, 4th Floor, Miami, Florida 33132 and Debra A. Speas, USPO, 300 N.E. First Avenue, Room 315, Miami, Florida 33132.

Stephen J. Bronis, Esquire